IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
                Plaintiff,

v.                                          No. 19-CR-0564 WJ

LOWELL BEGAY,
                Defendant.

**DEFENDANT LOWELL BEGAY'S APPEAL OF DETENTION ORDER**

COMES NOW, Lowell Begay, by and through his counsel of record, Erlinda O. Johnson, Esq., and pursuant to 18 U.S.C. § 3145 (b) and (c), appeals the Order of detention entered by the Magistrate Judge. (doc. 53) This appeal is to the District Court. In support of this appeal, defendant states the following:

**INTRODUCTION**

1.      Mr. Begay is a thirty-seven-year-old United States citizen who has lived is entire life in northwestern New Mexico.

2.      Mr. Begay represents that he was born in Shiprock, New Mexico. He attended school in Kirkland and Farmington, New Mexico. In the tenth grade, he dropped out of school to help his mother care for his newborn sister who was born with health issues. Mr. Begay's father passed away when Mr. Begay was a teenager. From the time he was approximately 18 to his early twenties, he worked as handy man.

3.      In his early twenties, Mr. Begay began to work in Farmington, New Mexico as a maintenance man at a local Best Western hotel. He held that job for six

years. Mr. Begay then went to work for "Off Again Auto" in Farmington. He also continued to work as a handy man.

4.      Mr. Begay's family resides in the Farmington, New Mexico area. His mother, Lenora Begay, has been found, by U.S. pretrial services, to be a suitable third-party custodian.

5.      The incident charged in the indictment herein occurred on September 11, 2018. The indictment was issued nearly one year later on July 25, 2019. Mr. Begay represents that he was not aware that an indictment had issued in July 2019, charging him with involuntary manslaughter.

6.      While on July 30, 2020, the government argued that agents had notified some of Mr. Begay's family members, in 2019, that they were looking for Mr. Begay, Mr. Begay represents that he was not made aware that he was sought by authorities. He further represents that agents may have contacted his extended family on the reservation, but these family members did not notify Mr. Begay as he does not maintain contact with them. Mr. Begay's mother with whom Mr. Begay is close represents that she was not contacted by any law enforcement authorities searching for Mr. Begay.

## ARGUMENT

7.      Since the issuance of the indictment, the World Health Organization officially declared a worldwide pandemic on March 11, 2020, as a result of COVID-19.[1]

8.      As of August 12, 2020, the new strain of coronavirus which causes COVID-19, has infected over 20.4 million people, leading to at least over 745,000 deaths worldwide.[2]

---

[1] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.

9.      As of August 12, 2020, there are 506,000 positive cases of COVID-19 and 9,034 deaths in Texas.[3] Mr. Begay is currently in custody at the West Texas Detention Facility.

10.      Jails and prisons house dense populations of unusually unhealthy individuals. *See* Exhibit A- Declaration of Chris Beyrer, Professor of Epidemiology, Int'l Health, & Medicine, Johns Hopkins School of Public Health at ¶16.[4]  Environmental factors inherent to any detention facility increase the risk of contagion, including, "risks such as overcrowding, population density in close confinement, insufficient ventilation, shared toilet, shower, and eating environments and limits on hygiene and personal protective equipment." *Id.* ¶ 14.

11.      The Centers for Disease Control (CDC) has acknowledged these realities in issuing guidelines for detention facilities.[5]  The Ninth Circuit has also accepted this public health consensus, *sua sponte*, ordering the release of an immigration detainee from custody "[i]n light of the rapidly escalating public health crisis, which public health

---

[2] https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200408-sitrep-79-covid-19.pdf?sfvrsn=4796b143_4.

[3]  https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc8b83

[4] See also Joseph A. Bick, Infection Control in Jails and Prisons, 45 Clinical Infectious Diseases 1047-155 (2007), https://doi.org/10.1086/521910; Gregg S. Gonsalves, et al., Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States (March 2, 2020), https://bit.ly/2W9V6oS (open letter signed by 815 experts in public health, law, and human rights); see also, Danielle Ivory, 'We Are Not a Hospital': A Prison Braces for the Coronavirus, N.Y. Times (Mar. 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirusprisons-jails.html; Martin Kaste, Prisons and Jails Worry About Becoming Coronavirus 'Incubators', NPR (March 13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jailsworry-about-becoming-coronavirusincubators; Keri Blakinger & Beth Schwarzapfel, How Can Prisons Contain Coronavirus When Purell is a Contraband?, ABA JOURNAL (March 13, 2020), https://www.abajournal.com/news/article/when-purelliscontraband-how-can-prisons-contain-coronavirus; Jennifer Hansler & Kylie Atwood, Pompeo Calls for Humanitarian Release of Wrongfully Detained Americans in Iran Amid Coronavirus Outbreak, CNN (Mar. 10, 2020), https://cnn.it/2W4OpV7.

[5] CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (March 23, 2020) *available at* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html

authorities predict will especially impact immigration detention centers." *Xochihua-Jaimes v. Barr*, No. 18-71460, 2020 WL 1429877, at *1 (9th Cir. Mar. 24, 2020).

12.     This public health reality is why jurisdictions across the country "are releasing thousands of inmates," prudently seeking to reduce risk in the face of the rising wave of the pandemic.[6]  Cases have spread throughout detention facilities at an alarming rate.

13.     Given the new and stark reality in the form of COVID-19, Mr. Begay's health is now at risk and this Court must order his release to an environment wherein his exposure to the virus is minimized.

14.     While the Court must still consider whether Mr. Begay poses a risk of flight or a danger to the community, Mr. Begay submits that he does not pose a danger to the community or a risk of flight.

15.     Mr. Begay's criminal history is limited to four misdemeanor convictions. While he appears to have several failures to appear on his record, Mr. Begay submits that he failed to appear in the past because he was living on the reservation and mail delivery was poor. Therefore, he did not receive notices for court hearings. Mr. Begay represents that would not be an issue now as he would be living with his mother in her home in Farmington, New Mexico or in the alternative at the La Pasada halfway house.

16.     Given the alarming rate of spread of COVID-19 and the demonstrated fact that individuals could potentially die if contaminated by the virus,  circumstances exist

---

[6] Washington Post, *'Disaster waiting to happen': Thousands of inmates released as jails and prisons face coronavirus threat* (Mar. 25, 2020) *available at* https://www.washingtonpost.com/national/disaster-waiting-to-happen-thousands-of-inmates-released-as-jails-face-coronavirus-threat/2020/03/24/761c2d84-6b8c-11ea-b313-df458622c2cc_story.html

which militate in favor of temporarily releasing Mr. Begay to the third party custody of Lenora Begay or in the alternative to the La Pasada halfway house.

17.     Critically, during this temporary release, Mr. Begay will not be left to his own devices, but will be supported and monitored by Pretrial Services, electronic monitoring and even home detention, if the court deems it necessary. Mr. Begay submits that release to the third-party custody of Ms. Begay, electronic monitoring, home confinement and supervision by pretrial services represent conditions the court may impose to ensure Mr. Begay will not pose a danger to the community or flee.

18.     Since the widespread contagion of COVID-19, Courts have been taking steps to protect those defendants at risk of complications or dying from the virus. In *United States v. Kennedy*, No. 5:18-cr-20315, Dkt. No. 77 (E.D. Mich. Mar. 27, 2020), the Court released a post-plea presentence defendant noting "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release and "is *necessary* for Defendant to prepare his pre-sentence defense". In *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020), the Court released the defendant with a criminal history in a gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement".

19.     Mr. Begay represents that he is neither a flight risk nor danger to the community. As put succinctly by one district court judge, "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-

19 pandemic if it can be avoided." *United States v Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020). Another court specifically based its decision on the fact that release protects not just the defendant, but the community. *See United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement")[7]

20. Given Mr. Begay's great incentive to not contract COVID-19, he submits that there are conditions that may be fashioned to ensure he does not pose a risk of flight or danger to the community.

---

[7] For other decisions taking the pandemic into account in making release decisions, see, e.g., *Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (sua sponte releasing detainee from immigration detention "[I]n light of the rapidly escalating public health crisis"); *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun & drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *Garlock*, 2020 WL 1439980, at *1 (citing "chaos" inside federal prisons in sua sponte extending time to self-surrender); *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); *see also United States v. Matthaei*, No. 1:19-CV-00243-BLW, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19); *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility"); *United States v. Copeland*, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic"). Although many of these decisions are based in part on particular health problems of the defendant, the basic principle that the pandemic should affect the balancing of interests is equally applicable here.

21.     A defendant ordered detained by a Magistrate Judge may seek review before the district court.  18 U.S.C. § 3145(b).  The district court conducts a *de novo* review of the facts with no deference to the magistrate judge's findings.  *See United States v. Koening*, 912 F.2d 1190, 1192 (9th Cir. 1990).  In performing this review, the court may, in its discretion, rely upon the record developed before the magistrate or conduct additional evidentiary hearings.  *See id.* at 1193.

22.     The factors set forth in 18 U.S.C. § 3142(g) "shall not be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). "The release or detention decision is not like a preliminary injunction in the civil context, where the court prejudges the merits of the case. Indeed, the Bail Reform Act reaffirms the guarantee of the presumption of innocence pretrial." *United States v. Lizardi-Maldonado*, 275 F.Supp.3d 1284 (D.Ut. 2017)(citing 18 U.S.C. § 3142(j)).

23.     The United States Constitution guaranties that, "Excessive bail shall not be required," U.S. Const. amend. VIII. Furthermore, "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895).  Against this constitutional backdrop, the Bail Reform Act sets forth a framework for federal courts to follow in determining when pretrial detention or other conditions (i.e., restrictions on freedom which are less than pretrial imprisonment) should be imposed.  The structure of the Act is hierarchical, beginning with the concept that an accused person should be released on personal recognizance unless the Government meets its burden of proving that no condition or combination of conditions for pretrial

release will assure the safety of the community and the accused's appearance at trial: The judicial officer considering bail may: (i) order the defendant released on personal recognizance, (ii) release the defendant subject to conditions, (iii) temporarily detain the defendant, or (iv) order detention pursuant to 18 U.S.C. §3142(e).  *See* 18 U.S.C. §3142(a).

> [T]he judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a), unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

24.     18 U.S.C. § 3142(b).  If, however, the judicial officer finds that standard release conditions set forth in §3142(b) will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, then the judicial officer shall impose conditions as described in § 3142(c), keeping in mind that the court is required "to subject [a defendant] to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *See* 18 U.S.C. §3142(c) & (e).  *See also United States v. Scott*, No. CR 10-1361 JB, 2010 U.S. Dist. LEXIS 54232, at *10 (D.N.M. May 25, 2010)(Browning, J.).

25.     Under the Bail Reform Act, the Court may order a Defendant to be detained only upon finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other

person and the community."  18 U.S.C. § 3142(b), (c), and (e).  The United States bears the burden of proving risk of non-appearance by a preponderance of the evidence, and the burden of proving dangerousness by clear-and convincing evidence.  *See* 18 U.S.C. § 3142(f); *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

26.     Indeed, in determining dangerousness, Congress contemplated the Court determine that factor based on "danger that the defendant might engage in criminal activity to the detriment of the community". *See* H.R.Rep. 12–13, U.S.Code Cong. & Admin. News at 3195–96. The Bail Reform Act's authorization of pretrial detention on the grounds of dangerousness is justified only when the evidence clearly establishes that the defendant's release would pose a serious physical danger to the community or a serious danger that the defendant would continue to engage in illegal activity. *United States v. Cox*, 635 F.Supp. 1047, 1057 (D.Ks. 1986). Importantly, Mr. Begay is presumed innocent.

27.     Congress imposed procedural safeguards designed to limit detention to only those instances when it is clearly necessary.  *United States v. Holloway*, 781 F.2d 124, 125-126 (8th Cir. 1986); S.Rep. No. 225, 98th Cong. 1st Sess. 8 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3191 (recognizing the detention statute may be constitutionally defective if it "fails to provide adequate safeguards and does not limit pretrial detention to cases in which it is necessary to serve the societal interests it is designed to protect").

28.     Any doubts regarding release should be resolved in the defendant's favor. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  As a result, only in "rare" cases should pretrial release be denied.  *Id*.; *See also United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991)(pretrial detention is an exceptional step); *United*

*States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987)(pretrial detention is appropriate for only a limited group of offenders).

29.     Mr. Begay requests this Court conduct a *de novo* review of the facts and order his release to the third-party custody of Ms. Begay or in the alternative to the halfway house.

30.     The burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991).  The defendant's burden of production is not heavy, but some evidence must be produced.  *Id.* Mr. Begay can rebut the presumption of detention.

31.     Additionally, in determining whether an accused should be released or detained prior to trial, 18 U.S.C. § 3142(g) directs the court to consider the following factors:

> (1) [T]he nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the

community that would be posed by the person's release. . . .

32.     Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community.  *See United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010).

33.     Mr. Begay submits that he is presumed innocent of the charged offenses. A presumptively innocent defendant has a great liberty interest in avoiding pretrial detention.  Thus, the district court must dispose of every alternative before ordering pretrial incarceration under the Bail Reform Act.  *United States v. Fernandez-Alfonso*, 818 F.2d 477, 478 (9th Cir. 1987).  For the Bail Reform Act to authorize pretrial detention, it must be the case that no combination of conditions, either those set out in the Act itself or any others that the magistrate or judge might find useful, can reasonably assure that the defendant will appear for trial.  *See* 18 U.S.C.A. § 3142(e); *United States v. Hanson*, 613 F. Supp. 2d 85 (D.D.C. 2009).

34.     Mr. Begay submits that given the fact that he has a limited criminal history, his mother's willingness to serve as a third party custodian and his lifelong ties to New Mexico, there are conditions that could be fashioned in this case that support that he will neither flee nor pose a danger to the community and thus should be released.

35.     The government, through Assistant U.S. Attorney David Cowen opposes the relief requested herein.

Wherefore, for the foregoing reason, Mr. Begay respectfully requests this Court order his release from custody.

Respectfully submitted,

/s/ electronically filed 8/12/20
 Erlinda O. Johnson, Esq.
620 Roma Ave NW,
Albuquerque, NM 87102
(505) 792-4048

Attorney for Lowell Begay


I hereby certify that a true and correct
copy of the foregoing was provided
to counsel for the government, via CM/ECF
this 12th day of August 2020

_____/s/_____
Erlinda O. Johnson
Attorney at Law