IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,    )
    )
        Plaintiff,    )    CRIMINAL NO. <u>19-CR-0564 WJ</u>
    )
    vs.    )
    )
**LOWELL BEGAY**,    )
    )
        Defendant.    )

## UNITED STATES' RESPONSE TO DEFENDANT'S <u>APPEAL OF DETENTION ORDER</u>

The United States of America hereby responds to the defendant, Lowell Begay's Appeal of Detention Order (Doc. 57), and asks this Court to uphold the July 30, 2020, pretrial order of detention entered by United States Magistrate Judge Gregory B. Wormuth in the instant case. (Doc. 53.); s*ee* 18 U.S.C § 3145(b).  This brief is submitted in support of such detention, and in advance of a hearing date that has yet to be scheduled in this matter.

## I.    INTRODUCTION

The Court should deny Defendant's motion and affirm the pretrial order of detention already entered in this case.  Moreover, Defendant has not offered any evidence that will rebut the government's proffer that the correctional and medical staff at Defendant's facility, Sierra Blanca in West Texas ("the facility"), have implemented precautionary and monitoring practices sufficient to protect and treat inmates during their detention.  Nor has Defendant established that, if released, he is not likely to flee the jurisdiction of the Court and/or pose a danger to any other person or the community.  There is no indication that Defendant will be any safer from the spread of COVID-19 if he is released, rather than remaining in custody.  And notwithstanding Defendant's concern about the virus, under 18 U.S.C. § 3142, Defendant's detention remains

appropriate because he is a flight risk and danger to the community.

## II.   PROCEDURAL HISTORY

On February 27, 2019, a grand jury charged Defendant in Count 1 of an Indictment with involuntary manslaughter in violation of 18 U.S.C. § 1153 and 1112 for an incident that took place on or about September 11, 2018. (Doc. 2.)  On July 25, 2019, a grand jury returned an identical charge of involuntary manslaughter in a Superseding Indictment. (Doc. 20.)  Defendant remained a fugitive until he was arrested on unrelated state charges in Ogden, Utah on May 25, 2020.  On May 26, 2020, a Motion for Writ of Habeas Corpus ad Prosequendum was filed by the United States Attorney's Office in the Central District of Utah.  On May 27, 2020, the Honorable Cecilia M. Romero, United States Magistrate Judge, issued the Writ.  On May 28, 2020, Defendant appeared before the Honorable Cecilia M. Romero, United States Magistrate Judge, for his Initial Appearance in Rule 5/5.1 Proceedings.  Defendant waived the Identity Hearing and was ordered detained, pending transfer to the District of New Mexico, for a detention hearing.

It should be noted that Pretrial Services in the Central District of Utah completed a pretrial services report and recommended detention.  A pretrial services report was also issued in the District of New Mexico, which also recommended detention. (Doc. 49.)  An Addendum was also filed and renewed the detention recommendation. (Doc. 51.)  At a detention hearing on July 30, 2020, the Honorable Judge Gregory B. Wormuth ordered Defendant be detained, and in doing so found by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community, and also found by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required.  (Doc. 53.)

In addition to any findings made on the record at the hearing, the reasons for detention

included the following: Defendant is subject to a lengthy period of incarceration if convicted,

Defendant's prior criminal history, Defendant's participation in criminal activity while on

probation, parole or supervision, and Defendant's history of alcohol or substance abuse. (Doc.

53.)  Defendant filed an appeal of this detention order on August 12, 2020. (Doc. 57.)

   In preparation for the July 30, 2020 detention hearing, an Amended Pre-Trial Services

("PTS") report was prepared regarding the defendant. (Doc. 49.)  According to the report,

Defendant has three prior misdemeanor drunk driving convictions out of San Juan County, New

Mexico in M-47-DR-2005-00072, M-147-DR-2009-00534, and M-147-DR-2010-00380.

Defendant has a history of failures to appear in 2007, 2011, and 2016. Defendant also violated

the terms of his probation in 2005, 2006, 2010, and in 2011 on four separate occasions over the

course of two difference cause numbers.  At the time of the instant offense on September 11,

2018, Defendant was out on warrant status for failure to appear on a felony drunk driving charge

in cause number D-1116-CR-2016-00931 out of San Juan County, New Mexico.  An Addendum

to Amended Bond Report was filed on July 29, 2020, which evaluated Defendant's requested

consideration of his mother being a third-party custodian, and despite his mother being found

suitable, the report concluded that Defendant should still be detained. (Doc. 51.)

   Defendant now appeals to reconsider his pre-sentence detention based in part on a

general risk of contracting the COVID-19 virus, and in part based on his belief that he is not a

risk of flight or a danger to the community.

## III. STANDARD OF REVIEW

   "The standard of review for the district court's review of a magistrate judge's detention or

release order under § 3145(a) is de novo."  *United States v. Cisneros*, 328 F.3d 610, 616 n.1

(10th Cir. 2003).

## IV.    LAW REGARDING PRE-TRIAL DETENTION

Pursuant to 18 U.S.C. § 3145, a court having original jurisdiction over a defendant's offense may review a magistrate judge's detention order.  The district court reviews de novo a magistrate judge's detention order under 18 U.S.C. § 3145. *See Cisneros*, 328 F.3d at 616 n.1.  In reviewing a magistrate's detention order, the district court "must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Barker*, 349 F. Supp. 3d 1113, 1128 (D.N.M. 2018).

Pursuant to the Bail Reform Act, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear and convincing evidence. *Cisneros*, 328 F. 3d at 616; 18 U.S.C. § 3142(f).  To determine whether there are conditions which can assure the defendant's appearance at trial and the safety of the community, the Court must consider:

(1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2)    the weight of the evidence against the person;

(3)    the history and characteristics of the person, including

    (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance a court proceedings; and

    (B)    whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)    the nature and seriousness of the danger to any person or the community that would be posed by release.

*Cisneros*, 328 F.3d at 617 (citing 18 U.S.C. § 3142(g)).

## V.   ARGUMENT

### A.  THE § 3142(G) FACTORS COUNSEL AGAINST RELEASING DEFENDANT PENDING TRIAL.

#### 1.   Nature and Circumstances of the Offense

Similar to Defendant's history of drunk driving, the present case unfortunately involves the use of alcohol while handing a firearm that was ultimately discharged by Defendant and Jane Doe was killed.  In addition to being aware of his own actions, and the United States' position that common sense would dictate that Defendant was aware of the arrest warrant in this case given that the FBI spoke to family about it.  Defendant also returned to the crime scene to watch what was going on a few hours after he fled.  By then, the police had arrived on scene and the FBI observed a male that turned out to be Defendant walking towards the crime scene. Defendant asked why law enforcement was at the home.  Defendant made reference that Armenta, his co-defendant, lived there and that Defendant would visit him on a regular basis. Defendant ultimately asked if everyone was okay and wanted to know what had taken place. Defendant left, and was not interviewed until two days later on September 13, 2018, once the FBI knew who he was and what is alleged to have taken place on September 11, 2018.

#### 2.   The Weight of the Evidence

The weight of the evidence is strong.  Defendant made admissions to the FBI concerning his level of intoxication while handling a firearm.  The co-defendant in this case, Jerry Armenta, has already pled guilty and been sentenced for his role of being a felon and possessing the firearm after Defendant handled the firearm when it was discharged and Jane Doe was killed.

### 3.      The History and Characteristics of the Person

Defendant's history of alcohol abuse and making poor decisions while under the influence encompasses both his criminal history and the tragic facts of his case.  Defendant has a history of failing to appear before court while his proceedings are pending, and he also has a history of violating the terms of probation after being sentenced.  The warrant in this case was triggered when Defendant was arrested in Utah on local paraphernalia and open container violations, which he served 10 days in jail for.  Even if this Court were to grant Defendant's motion for release, he would still be subject to his outstanding felony warrant in D-1116-CR-2016-00931 out of San Juan County, New Mexico.  To that end, it is very unlikely that Defendant would be released to his mother's custody and Defendant's federal case would only be further delayed given his pending state proceedings.[1]

### 4.      The Nature and Seriousness of the Danger to the Community Posed by the Defendant's Release

 Defendant has shown an inability to remain law-abiding.  His repeated choices to consume alcohol and make reckless decisions, whether by driving a vehicle drunk or handling a firearm while drunk, make him a danger to the entire community in which he might reside.  Once arrested for his criminal behavior, Defendant has almost always shown a tendency to not appear for court.

## VI.    COVID-19

The United States, among most other countries, is currently responding to a global pandemic concerning the novel coronavirus, COVID-19.  Defendant generally contends that his health is at risk if he remaining in custody.  But Defendant has proffered no evidence that he

---

[1] For example, on August 14, 2020, this Court entered a Discovery Order permitting Defendant access to a Computer to facilitate discovery in this case. (Doc. 58.)  If Defendant is released on his federal matter, and is transferred to a state jail, it is unclear whether he would still receive the benefit of such a Computer.

suffers from any underlying healthy problems that would put if at higher risk if exposed to the virus, nor has Defendant shown that his specific facility exposes him to a greater risk.  Instead, Defendant maintains that he should be released simply because COVID-19 is unfortunately present, both within society and many of our detention facilities.

To be sure, the Bail Reform Act instructs courts to consider the "physical and mental health" of the defendant as one of the factors in its analysis.  18 U.S.C. § 3142(g)(3)(A).  Notwithstanding the COVID-19 outbreak, that factor does not weigh heavily, if at all, in favor of Defendant's release.  A number of inmates in United States Marshal Service ("USMS") custody in the District of New Mexico have tested positive for the COVID-19 virus.[2]  Currently there are no District of New Mexico inmates at Defendant's facility who are positive for Covid-19.  One previous inmate who was positive has now recovered.

However, upon information and belief, at each affected facility, precautionary measures are in effect to prevent the spread of the disease.  Infected inmates are isolated from other inmates.  Contact tracing is being conducted and staff are carefully monitoring any who have been in contact with those who tested positive.  Further, restriction of uninfected inmate movement has been implemented.  Periodic testing of staff and inmates is ongoing.  The facility employs medical personnel who are able to isolate and monitor those who have been exposed or infected.  And if necessary, the facility will transfer an affected inmate to an appropriate medical facility for treatment.

---

[2]As of August 21, 2020, fewer than 50 federal inmates in USMS custody, in the District of New Mexico are currently positive for COVID-19, as described below:
- Otero County Prison Facility – 3 DNM inmates are positive and quarantined;
- Doña Ana County Detention Center – 8 DNM inmates are positive and quarantined;
- Cibola County Correctional Center – 10 DNM inmates are positive and quarantined;
- Torrance Count Detention Facility – 1 DNM inmates are positive and quarantined.

Title 18, United States Code, Section 3142(i) allows for temporary release of a defendant "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another *compelling reason*." (emphasis added)  The defendant bears the burden of proof.  *United States v. Reese*, 2012 WL 13080791, *2 (D.N.M. April 2, 2012) (citation omitted).  In *Reese*, the defendant was seeking release in order to prepare his defense, but failed to show that his release was necessary for that purpose.  *Id.*

In the context of defendants' request for release under Section 3142(i) for medical reasons, courts' determinations have turned on whether or not a defendant is able to receive needed medical treatment while detained.  For example, in *United States v. Rebollo-Andino*, the defendant requested release from pre-trial detention to home incarceration under § 3142(i) on grounds that he suffered from various medical ailments, including an abdominal hernia that required surgery. 312 F. App'x. 346, 347 (1st Cir. 2009).  Concluding that the defendant made no showing that he would be unable to receive necessary treatment while detained, the court determined that the defendant failed to assert a "compelling reason" for temporary release under § 3142(i). 312 F. App'x. at 347.  Similarly, in *United States v. Birbragher*, the court determined the defendant failed to assert a "compelling reason" to be released from pre-trial detention under § 3142(i) to receive elective gall bladder surgery, where he made no showing that he would be unable to receive the necessary treatment while in the custody of the United States Marshal Service.  No. 07-CR-1023-LLR, 2008 WL 1883504, *1-2 (N.D. Iowa 2008).

In contrast, in *United States v. Cordero-Carballo*, the defendant, who was involved in a gun fight with DEA agents, suffered significant gunshot wounds resulting in a prognosis of partial paraplegia, loss of left hand function, large ulcer at the lower back and pelvis with an active infection, incomplete healing from abdominal surgery, and large wounds near the

defendant's legs, buttock, and neck.  185 F. Supp. 2d 143, 144 (D.P.R. 2002).  A physician

analyzing the defendant's condition proffered to the court that the defendant had the best

chance at survival and recovery if he were to be treated at his home.  *Id.* at 144-45.  The court

also found that in his present physical condition, the Bureau of Prisons would be unable to

provide him with the necessary treatment the defendant required. *Id.* at 146.  As a result, the

court found that the defendant could be temporarily released from custody pending trial. *Id.*

Therefore, the positive tests within the federal inmate population in the District of New

Mexico neither undermine the propriety of detention under 18 U.S.C. § 3142(e), nor justify

temporary release under 18 U.S.C. § 3142(i).  Defendant's arguments ignore the facts justifying

his detention; they overlook the facility's preparations for COVID-19 and steps to respond to

these positive cases, in order to protect all detainees; and they would endorse the mass release of

pre-trial detainees into the community—jeopardizing, rather than promoting, public health and

safety.  Furthermore, Defendant has not met his burden to show that he would not be able to

receive needed medical treatment for any speculative medical issues that may arise while he is

detained.

Despite Defendant's fear of COVID-19 exposure, under 18 U.S.C. § 3142,

Defendant's detention is appropriate as he remains a flight risk and a danger to the community

and the COVID-19 pandemic has no bearing on whether conditions of release will reasonably

assure the safety of the community.  18 U.S.C. § 3142(f).  This is because, as discussed in

detail above, the facts justifying detention have not changed.  To the contrary, all of the facts

that initially justified defendant's pre-trial detention remain true.  The nature and

circumstances of defendant's offense have not changed.  The weight of evidence against the

Defendant remains strong.

Moreover, Defendant's history and characteristics justify detention, and his release would endanger the community.  Because Defendant remains a flight risk and a danger to the community, as the Bail Reform Act recognizes, he should remain detained pending trial.  18 U.S.C. § 3142(e)(1). *See United States v. Aguilar, et al*., 3:18-cr-00119-RS, Doc. 273 (N.D. Cal. April 24, 2020) (denying Coronavirus-positive defendant's release from pretrial custody based on his dangerousness and risk of flight).

Not only does Defendant present a danger to other people, but the community itself is more vulnerable given the COVID-19 pandemic.  For example, the district court in Maryland observed, installation of location monitoring tools poses a risk to United States Pretrial Services officers "given the current recommendations regarding implementation of social distancing." *United States v. Martin*, 2020 WL 1274857, Case No. PWG-19- 140-13 (D. Md. Mar. 17, 2020).

In the current climate, irresponsible social habits can also endanger the health of the community.  The entire state of New Mexico is currently advised to essentially "stay at home" to avoid the spread of COVID-19 and to wear a mask and practice social distancing if they must go out.  A person who ignores such admonitions and rules could increase infection rates, leading to severe illness and death.  Defendant's history demonstrates that he is not someone apt to follow court-issued rules, and therefore one would question the likelihood of him abiding by social rules like stay-at-home or social distancing orders.  A person who ignores such admonitions and rules could increase infection rates, leading to severe illness and death. Releasing the defendant from detention, and adding him back into the general population, is antithetical to the concept of stay-at-home.  Defendant proposes he be released to his mother, Lenora Begay, as third party custodian in Farmington, San Juan County.  As of August 21, 2020,

the New Mexico Department of Health reports 3,123 positive tests for COVID-19 in San Juan County.[3]  There is no indication that Defendant will be any safer from the spread of the virus if he is released, rather than remaining in custody.

Furthermore, releasing inmates to home detention and electronic monitoring, as Defendant might request, would create an avalanche of inmates seeking release for similar reasons and place an undue burden on the pretrial services officer and the courts.  The confirmed cases of COVID-19 in the federal inmate population in the District of New Mexico do not diminish the public interest in keeping dangerous offenders off the streets and the Court's interest in assuring the defendant's presence at future proceedings.

## VII.    CONCLUSION

The magistrate court correctly ruled on July 30, 2020 that the defendant should be detained pending trial because there are no conditions that will reasonably assure his appearance at future court proceedings, nor the safety of the community.  The risk created by COVID-19 does not create a situation in which the defendant is more likely to return to court nor less likely a danger to the community.  For the foregoing reasons, this Court should deny the defendant's appeal and detain the defendant pending the resolution of this case.

---

[3] *See* Cases by County *available at* https://cv.nmhealth.org/cases-by-county, last accessed August 21, 2020.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

***Electronically Filed 8/21/20***
DAVID PATRICK COWEN
Assistant United States Attorney
201 Third Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which will
send electronic notification to defense
counsel of record on this date.
***Electronically Filed 8/21/20***
DAVID PATRICK COWEN
Assistant United States Attorney