IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
        Plaintiff,

vs.                                                                19-CR-00564 WJ

LOWELL BEGAY,
        Defendant.

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT
LOWELL BEGAY'S APPEAL OF DETENTION PENDING TRIAL**

COMES NOW, Lowell Begay, by and through his counsel of record, Erlinda O. Johnson, Esq., and hereby respectfully submits the following reply to his appeal of detention, pursuant to 18 U.S.C. § 3145 (b) and (c). In support of this reply, defendant states the following:

> THE GOVERNMENT HAS NOT MET ITS BURDEN TO PROVE
> THAT NO COMBINATION OF CONDITIONS WILL REASONABLY
> ASSURE MR. BEGAY'S PRESENCE AT TRIAL.

Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3156, a court generally cannot detain an accused unless it finds "that no conditions or combinations of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e) and (b). The Bail Reform Act of 1984, 18 U.S.C. §§ 3141, et. seq., requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(c)(2); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor.  767 F.2d at 1405. While section 3142(g) specifies the various factors that must be considered in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of the community, the government focuses primarily on the alleged strength of its case against Mr. Begay. *See* 18 U.S.C. § 3142(g). However, of the factors set forth in section 3142(g), the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt.  *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); 767 F.2d at 1408. Importantly, the factors set forth in 18 U.S.C. § 3142(g) "shall not be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). "To consider the weight of the evidence for purposes of prejudging the outcome would convert pretrial detention from a regulatory detention into a punitive detention." *United States v. Lizardi-Maldonado*, 275 F.Supp.3d 1284 (D.Ut. 2017)(citing *United States v. Salerno*, 481 U.S. 739, 747–48, 107 S.Ct. 2095 (1987)).

Here, there is no evidence that if released Mr. Begay would engage in criminal activity or fail to abide by the Court's order. Notably, the strength of the government's evidence cannot serve as a basis for finding dangerousness. Indeed, the Court cannot rely on a pretrial determination of guilt to find that it cannot fashion conditions of release. Supervision by pretrial services, electronic monitoring and home detention will reasonably assure the Court that Mr. Begay would not commit any offenses or flee.[1] As previously noted, even if there is a serious flight risk, release may not be denied unless there are no conditions which would reasonably

---

[1] While there appears to be an outstanding warrant in a state case in San Juan county, New Mexico, if released on this case, Mr. Begay would be able to expeditiously address the outstanding warrant and would likely be placed on conditions of release on that case.

2

assure the appearance of the defendant. *United States v. Sabhnani*, 493 F.3d 63, 75 (2nd Cir. 2007). Release to the third-party custody of Mr. Begay's mother will assure Mr. Begay will not flee or pose a danger to the community. More importantly, it will ensure that the pre-trial detention in this case is not punitive and thus violative of his right to Due Process.

### CURRENT CONDITIONS AT LOCAL JAILS DUE TO THE PANDEMIC MILITATE IN FAVOR OF RELEASING MR. BEGAY

The government also opposes Mr. Begay's release despite the potential danger posed by covid-19. The government fails to appreciate the gravity of the situation regarding COVID-19 and its spread throughout our local jails. It is now widely established that jails have failed to implement policies to stem the spread of covid-19. The government argues that jails indeed have policies and procedures in place to prevent the spread of the virus. However, the mere existence of plans and procedures means nothing if jails have failed to implement these procedures or, more importantly, if the procedures have been ineffective. The former concept is irrelevant, because the data unequivocally demonstrates the abject failure of Otero Prison facility's[2] plans and procedures to prevent the spread of novel coronavirus (COVID-19) among detainees.

As cases of COVID-19 spread throughout New Mexico's jails and prisons in June and July,[3] Otero Prison Facility and the Cibola Correctional Center experienced unprecedented outbreaks, resulting in the death of two inmates at Otero.[4] As recent as August 26, 2020, the Cibola Correctional Center's positive cases had reached 329. COVID-19 in New Mexico (correctional facility dashboard), New Mexico Dept. of Health, https://bit.ly/2Wp4PpE  (last

---

[2] Mr. Begay is currently being detained at the Otero Prison Facility.

[3] Matthew Reisen, *NM jails dealing with hundreds of COVID-19 cases*, Albuquerque Journal (July 24, 2020, 10:05 pm) https://www.abqjournal.com/1479302/nm-jails-deal-with-hundreds-of-covid-19-cases.html (last visited Aug. 7, 2020).

[4] https://www.newsbreak.com/new-mexico/alamogordo/news/1590445930538/covid-19-outbreak-reported-at-otero-county-prison-facility

visited Aug. 26, 2020, updating regularly). The rapid spread of the virus at the other federal holding facility, Otero County Prison Facility, which reached 749 positive cases by August 5, 2020, and the inability of the prison leadership to gain control of the spread foreshadowed the fate of the virus at Cibola. Jens Gould, *Inmates at Cibola County prison protest care amid pandemic*, Santa Fe New Mexican (Aug.5, 2020) https://bit.ly/2F4auwD (last visited Aug. 26, 2020).

The government's disregards the exponential spread of positive COVID-19 cases at Otero and Cibola. The government also appears to ignore the rapid spread at the jails under contract with the U.S. Marshal's Service and the dangerousness of the virus. This attitude toward COVID-19 infection among inmates in general and at Otero or Cibola bolsters Mr. Begay's argument that his well-being would be more protected on supervised release and outside of a jail setting. The government's implication that a jail will protect Mr. Begay is a good reminder of why "the ten most terrifying words in the English language may be, 'I'm from the government and I'm here to help you.'" *Garcia-Aguilar v. United States Dist. Court*, 535 F.3d 1021, 1023 (9th Cir. 2008).

The lack of a federal plan to address the spread of the coronavirus in this country has caused the Center for Disease Control (CDC) and the government leadership of New Mexico to implore *individuals* to *take it upon themselves* to implement personal care and precautions including wearing masks, washing hands often, avoiding close contact, keeping six feet of space between individuals, keeping away from people who are sick, and cleaning and disinfecting frequently touched surfaces. *How to Protect Yourself and Others*, CDC, https://bit.ly/2xEVEsY (last visited Aug. 26, 2020). The CDC simply directs, **"The best way to prevent illness is to avoid being exposed to this virus."** *Id.*

Mr. Begay moves this court to order his pre-trial release so that he can stay at home to avoid exposure to the COVID-19 illness while he awaits trial. If the leadership of either Otero where Mr. Begay is housed or Cibola where he may be transferred is unable to implement its own precautionary measures to care for its inmates and prevent the spread of the virus, it is incumbent upon individuals to take responsibility for themselves. The exponentially increasing number of cases at these jails demonstrates the likelihood that Mr. Begay is able to take care of himself more effectively than in a detention setting. A controlled and supervised release of Mr. Begay is the best and most reasonable measure for him to control his exposure to COVID-19 given Otero and Cibola's abject failure to protect the inmates housed at those facilities and the exponentially increasing number of positive COVID-19.

It should be noted that other courts around the country have rejected the "under control" or "safer at jail" argument by prosecutors in favor of an inmate's self-care. *United States v. Robinson*, Case No. 3:10-cr-261, ECF No. 86 at 10 (E.D. Va. July 17, 2020) (rejecting government's argument that inmates are safer in prison than in communities with ongoing spread and noting that "the BOP's [test] positivity rate of twenty-nine percent" shows that they are only testing the sickest inmates and that they are therefore likely dramatically undercounting the number of sick inmates in custody); *United States v. Powell*, No. 05-cr-61, ECF No. 78 at 9 (D.D.C. June 18, 2020) ("[I]t cannot seriously be disputed that an individual in prison is less able to control his own surroundings and exposure than he would be if living in single-family residence in the community."); *United States v. Agomuoh,* No. 16-20196, 2020 WL 2526113, at *8–9 (E.D. Mich. May 18, 2020) (Levy, J) ("[I]t is irrelevant whether Defendant could contract COVID-19 outside of FCI Morgantown. The pertinent question is whether there is some product of Defendant's combined medical conditions and conditions of confinement that 'substantially

diminish' his ability to provide self-care '*within the environment of a correctional facility.*'" (emphasis in original)); *United States v. Sanders*, No. 19-20288, 2020 WL 2320094, at *8 (E.D. Mich. May 11, 2020) (Berg, J.) ("[T]he Court will not countenance the cynical and illogical position that a defendant is 'safer in prison' as a reason to support detention."); *United States v. Esparza*, 2020 WL 1696084 (D. Idaho Apr. 7, 2020) (concluding based on review of unique transmission risks associated with correctional settings that "despite the best efforts of BOP officials, the likelihood of contracting the virus is greater in prison than if a defendant were able to fully self-isolated at home."); *Coreas v. Bounds*, 2020 WL 1663133, at *5 (D. Md. Apr. 3, 2020) (characterizing the "claim that someone will be safer from a contagious disease while confined in close quarters with dozens of other detainees and staff than while at liberty" as "an absurdity").

Mr. Begay's health and well-being as a pre-trial defendant[5] must be protected in light of the new and very real threat of the COVID-19 virus and its unchecked spread at Otero and Cibola.

Wherefore for the foregoing reasons and the reasons set forth in his appeal of detention order, Mr. Begay respectfully moves this Court for an Order releasing him from custody.

Respectfully submitted,

/s/ electronically filed 8/26/20
 Erlinda O. Johnson, Esq.
620 Roma Ave NW,
Albuquerque, NM 87102
(505) 792-4048

Attorney for Lowell Begay

---

[5] "The Constitution and the Supreme Court long have recognized that the rights of a convicted prisoner are different from those of a pretrial defendant. *See* U.S. Constitution, Amends. V VI; *Riggins v. Nevada*, 504 U.S. 127, 135 (1992); *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979) . . . But until he is convicted, Weston's rights and the relevant issues must be viewed through a somewhat different prism than those for a convicted prisoner." *United States v. Weston*, 206 F.3d 9, 17 (D.C. Cir. 2000).

I hereby certify that a true and correct
copy of the foregoing was provided
to counsel for the government, via CM/ECF
this 26th day of August 2020

                /s/
_____
Erlinda O. Johnson
Attorney at Law