**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                                     No. 19-cr-0564 WJ

LOWELL BEGAY,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S APPEAL OF DETENTION ORDER

**THIS MATTER** is before the Court on Defendant Lowell Begay's Appeal of Detention

Order (Doc. 57), filed August 12, 2020, wherein Defendant requests pursuant to 18 U.S.C. § 3145

(b) and (c) that the Court review U.S. Magistrate Judge Gregory Wormuth's detention order and

release him pending trial. For the reasons explained in this Opinion and Order, the Court finds that

there is no condition or combination of conditions that will reasonably assure Defendant's

appearance or the safety of the community in event of his release. Therefore, Defendant shall

remain detained pending trial.

### BACKGROUND

Defendant is charged with the unlawful killing of Jane Doe by handling a firearm while

intoxicated, without due caution and circumspection and with a wanton and reckless disregard for

human life when he knew and should have known that his conduct imperiled the lives of others,

in violation of 18 U.S.C. §§ 1153 and 1112. Doc. 1. After hearing argument from counsel at

Defendant's arraignment/detention hearing on July 30, 2020, Judge Wormuth found that there were "no conditions under which Mr. Begay could be released," citing Defendant's "seven probation violations . . . five warrants . . .  [and] a number of failure to appears," and further stating: "Mr. Begay has failed to comply with conditions set by courts. And so, I have no confidence he would follow my order." Doc 62 at 9-10. Judge Wormuth ultimately ordered that Defendant be detained pending trial because he found "by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person in the community" and "by a preponderance of the evidence that no condition or combination of conditions will reasonably assure his appearance as required." Doc. 53 at 2. Shortly thereafter, Defendant filed the subject appeal of Judge Wormuth's detention order. The Court held a hearing on Defendant's motion on September 11, 2020, during which Defendant proposed third party custody with his mother as an alternative to pretrial detention, with conditions including monitoring by Pre-Trial Services, home confinement, drug and alcohol testing, and zero tolerance for violation of Court stipulations. Doc. 67 at 1-2. Defendant cited his fear of COVID-19, and suggested La Pasada Halfway House as an alternative if the Court found that Defendant's mother's residence was not an appropriate release facility. Doc. 67 at 2.

## DISCUSSION

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Cisneros*,

328 F.3d 610, 616 n.1 (10th Cir. 2003) (quoting *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992)). When so doing, the Court, like the Magistrate Judge, is governed by 18 U.S.C. § 3142, which states that a defendant may be detained pending trial only if the Court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* at 616 (quoting 18 U.S.C. § 3142(e)(1)). The United States "must prove risk of flight by a preponderance of the evidence" and "dangerousness to any other person or the community by clear and convincing evidence." *Id.*

When determining whether there are conditions of release that will reasonably assure the appearance of a defendant as required and the safety of any other person and the community, the Court is required to take into account the available information concerning (1) the nature and circumstances of the offense, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant (including, *inter alia*, (i) the defendant's character, physical and mental conditions, family and community ties, resources, historic alcohol or drug abuse, criminal history and records concerning appearance at court proceedings and (ii) whether, at the time of the instant offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal or completion of a sentence), and (4) the nature and seriousness of the danger to the community that would be posed by the defendant if released. *See* 18 U.S.C. § 3142(g).

## I.      Risk of Flight

The Government has proven risk of flight by a preponderance of the evidence. Defendant has an extensive history of probation violations (2005, 2006, 2010 and 2011) and failures to appear (2007, 2011 and 2016). Doc. 59 at 3. At the time of the instant offense, Defendant was wanted for

failure to appear on one of his many felony driving while intoxicated charges, *Id.*, and following his indictment on February 27, 2019, Defendant remained a fugitive until an arrest on an unrelated charge in Ogden, Utah on May 25, 2020—over a year later. Doc. 59 at 2. Pre-Trial Services concluded that Defendant should be detained notwithstanding his mother's willingness and suitability as purveyor of Defendant's requested release destination. *See* Doc. 51. Judge Wormuth similarly concluded that he had "no confidence" Defendant would follow his order, finding "by clear and convincing evidence that no condition or combination of conditions [would] reasonably assure the safety of any other person in the community" if Defendant was released, and "by a preponderance of the evidence that no condition or combination of conditions [would] reasonably assure his appearance as required." Doc. 53 at 2. This Court agrees.

Defendant would have the Court believe that his historic probation violations and failures to appear is not indicative of a propensity to flee, and that his relocation to Utah was not in evasion of the subject charges against him, but rather a product of Defendant's forgetting the charges existed to begin with. The Court is unconvinced; first, Defendant has failed to appear on three occasions, and violated probation on four. Notably, the offenses charged then were less severe than the ones now pending against him, and if anything, Defendant only has more incentive now to violate Court orders. Defendant contends that his failures to appear were a result of poor mail delivery, but how many times can such an excuse reasonably apply? Perhaps had Defendant missed only one such mandated hearing, and were his compliance records not already weighted with probation violations and failures to avail of treatment services for other alcohol-related incidences, the Court could accept this portion of Defendant's argument, but this is far from the case. Second, while Defendant's presence in Utah may have been unrelated to his New Mexico indictment, the Court finds that Defendant's family was notified, and that the Government took adequate measures

to secure Defendant's arrest—measures which were thwarted by Defendant's presence in Utah until such time as he was arrested on local paraphernalia and open container violations. *See* Doc. 59 at 6. As such, based on the above facts, the Court finds that Defendant is a flight risk.

## II.        Danger to the Community

The Government has also proven that Defendant is a danger to the community by clear and convincing evidence. In 2005, Defendant was sentenced for driving under the influence of liquor or drugs. In 2009, Defendant was sentenced for driving under the influence of liquor or drugs. In 2010, Defendant was sentenced for driving under the influence of liquor or drugs. In 2016, Defendant was charged with driving under the influence of liquor or drugs, which charges are still pending. So, at least four times Defendant has endangered the lives of those in the community while intoxicated. Defendant urges the court to consider release to home detention and electronic monitoring, as well as alcohol rehabilitation and testing; but offers nothing to contravene the Government's assertion that he is a danger to the community. Without placing an undue burden on Pre-Trial Services, there is no way to ensure Defendant is not a threat to those around him. The record establishes quite clearly that Defendant is not accountable to rationality while intoxicated, and all it would take for Defendant to imperil the lives of others in the community is one instance of regression. No matter the stipulations this court might set as to Defendant's release, Pre-Trial Services cannot personally monitor Defendant or his acquaintances at all times, and by the time, after one evening of cursory drinking, police arrive to his mother's residence in response to the alarm set off by his breaching of electronic confinement, Defendant could already be behind the wheel putting others at risk again. Accordingly, based on the above facts, the Court finds that Defendant is a danger to the community.

### III.    No Combination of Conditions

The Court acknowledges that despite its finding that Defendant is a flight risk and danger to the community, he should not be detained unless there is no condition or combination of conditions that will reasonably assure his appearance as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(e)(1). At the hearing on Defendant's appeal, Defendant argued that there are suitable conditions that would reasonably assure his appearance and the safety of the community, namely, electronic monitoring and home confinement, alcohol rehabilitation therapy, and regular alcohol and drug testing. However, as stated, no such measures nor any other measures the Court can imagine will ensure that Defendant does not drink alcohol during release. Furthermore, Defendant's aforementioned refusal to comply with the terms of his previous probation as well as his failures to appear before court while his proceedings were pending are not only emblematic of his propensity to flee, but further suggest that Defendant may violate any condition or combination of conditions this Court may set to prevent him from procuring alcohol, thus potentially endangering others as he has so often done in the past. The Court has considered the factors set forth in § 3142(g), and nearly every one weighs against Defendant,[1] none less so than his consistent unwillingness to comply with court orders and his predilection for intoxicated, dangerous behavior.[2]

---

[1] As argued by the Government and supported by the record, the § 3142(g) factors, as they apply to Defendant, strongly counsel against release. (1) The nature of the offense is severe, and Defendant, having visited the crime scene, surely should have been aware of a pending warrant. What's more, his family was notified. Doc. 59 at 5. (2) While the Court notes undoubtedly that Defendant is innocent until proven guilty, the evidence against him is strong; Defendant has admitted intoxication while handling the firearm, and codefendant has already pled guilty to possessing the firearm as a felon after Defendant handled such firearm when it was discharged and killed Jane Doe. *Id.* (3) Defendant has extensive history of alcohol abuse, dangerous activities, failures to appear and probation violation as discussed herein. (4) Defendant poses a serious danger to the community as discussed herein.

[2] Furthermore, Defendant's appeal may be moot. It is unlikely that Defendant would be released to his mother's custody or to the custody of La Pasada as he has pending state proceedings and an outstanding warrant that would require him to be turned over to state authorities if released. Accordingly, if Defendant is brought in for such proceedings, his release would be nominal only, and such state proceedings would likely protract the subject federal proceedings pending against him.

IV.    **Release to La Pasada Halfway House**

While the Court finds clearly that Defendant is a threat to the community if released to his mother's house, he may argue that his proposed alternative, the La Pasada Halfway House, would lessen the likelihood that he has access to alcohol which, by extension, may mitigate his potential threat to the community to a degree. Certainly, La Pasada may have protocols for limiting its residents' access to alcohol that are more established and judicially trustworthy than the Defendant's mother, however, nothing can be said here with respect to flight. Notwithstanding any de minimis reduction in danger, the Court still agrees with the Government that Defendant's history, as well as the magnitude of the charges pending against him, make him a risk of flight, and that there is no combination of conditions, whether implemented on Defendant in his mother's house or in tandem with La Pasada's protocols, that would assure that Defendant appears for trial.

Furthermore, as discussed below, Defendant grounds his claims in a fear of contracting COVID-19. As stated in the email dated August 27, 2020 from the Chief U.S. Probation Officer for the District of New Mexico, a copy of which has been furnished to Defense Counsel, La Pasada has recently seen a wave of COVID-19 cases, and is declining to accept any new residents. The Court has confirmed that this is still in effect as of September 15th. Even if La Pasada was accepting new residents at this time, given the concerns raised by Defendant regarding his fear of COVID-19, the Court is not going to release Defendant to a halfway house that is currently a hotspot for the very thing Defendant seeks to avoid.

V.    **COVID-19**

Much of Defendant's argument centers around the recent outbreak of COVID-19; particularly, Defendant contends that "this Court must order his release to an environment wherein

his exposure to the virus is minimized"—presumably pursuant to 18 U.S.C. § 3142 and selected

case history concerning COVID-19—because there is a risk that he will contract the virus while

detained. Defendant, however, did not specify why he is at an increased risk of COVID-19, and

although the Court is mindful of the magnitude of the COVID-19 pandemic and the health risks it

presents, Defendant is not entitled to release "based solely on generalized COVID-19 fears and

speculation." *United States v. Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

Defendant's potential exposure to COVID-19 is not extraordinary; countless similarly situated

inmates and prisoners, many of which have known or unknown sensitivities to COVID-19's

harmful effects, are forced to endure the same risks of exposure. *See United States v. Martin*, 2020

WL 1274857, at *2–3 (D. Md. Mar. 17, 2020) (declining defendant's motion for release when

defendant had health conditions making him particularly sensitive to COVID-19); *see also United

States v. Jai Montreal Winchester*, 2020 WL 1515683, at *12 (M.D.N.C. Mar. 30, 2020) (declining

to release a defendant when his arguments "applie[d] equally to every detainee in detention" and

were merely attempts to use the "current public health crisis as an opportunity to obtain . . . release

by substituting conjecture, hyperbole, misstate for reasoning").

    Defendant cites various courts which have chosen to grant detainees temporary release in

light of COVID-19,[3] but, as the Government points out, Defendant's physical health concerns do

not weigh heavily in favour of his release. *See* Doc. 59 at 7. Defendant has not evidenced any

---

[3] Defendant refers to a number of cases, the vast majority of which contemplate defendants' predispositions to contracting or encountering unique medical difficulties relating to COVID-19, and of which the others primarily include defendants who were neither flight risks nor dangers to the community. *See, e.g., United States v. Garlock*, 2020 WL 1439980 (N.D. Cal. Mar. 25, 2020) (extending surrender date where defendant was determined by the magistrate judge to be neither flight risk or danger to community); *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (extending only a defendant's intermittent confinement by thirty days); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) (granting where defendant was 74-year-old man with mitigated risk of flight); *United States v. Perez*, 2020 WL 1329225 (S.D.N.Y. Mar. 19, 2020) (granting "based on the confluence of serious health issues and other risk factors facing defendant"); *United States v. Stephens*, 447 F.Supp.3d 63 (S.D.N.Y. Mar. 19, 2020) (granting when new evidence undermined previous finding that defendant was a danger to the community); *United States v. Matthaei*, 2020 WL 1443227 (D. Idaho Mar. 16, 2020) (granting for defendant with multiple health problems and high risk of complications from COVID-19 when Government did not oppose request).

preexisting health conditions that make him any more likely than others to contract the virus, and the Government contends that the prison facilities are equipped to handle COVID-19; in fact, at facilities affected with the virus in New Mexico, precautionary measures are in place to prevent its spreading and infected inmates are quarantined and subject to contact tracing, restrictions on the movements of uninfected inmates are implemented, and both prisoners and staff are periodically tested for the virus. *Id*.

Even if Defendant was able to demonstrate that his particular physical condition and his placement in a prison facility made the risks inherent to COVID-19 particularly acute, the oft-employed COVID-19 claim does not weigh more heavily than the requisite condition that Defendant pose neither a risk of flight nor danger to the community. *See United States v. Dahda*, 2020 WL 4578381, at *2-3 (10th Cir. 2020) (affirming district court's order denying motion for release when defendant had an auto-immune disease increasing the risks of severe illness if he were to contract COVID-19 and needed testing to determine whether he was a match for his sister's kidney transplant because defendant nonetheless posed a danger to the community). As the Government has shown, Defendant does not meet any of these conditions, no matter the measures the Court could implement as to his release, and accordingly, does not qualify for the relief he seeks.

## VI.     Relocation to Local Facility

Defendant is presently detained in southern New Mexico as a logistical result of his transportation from Utah following his arrest. Upon discussion with the U.S. Marshal Service, and to better facilitate Defendant's ability to meet with his counsel, the Court shall take the necessary actions that will result in Defendant being relocated to a new facility closer to Albuquerque.

**CONCLUSION**

For the foregoing reasons, the Court finds that Defendant is a flight risk and danger to the community and that there is no condition or combination of conditions that will reasonably assure his appearance or the safety of the community. Accordingly, Defendant's Appeal of Detention Order is **DENIED**.

**IT IS SO ORDERED**.

_____

**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**